**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DON HARRIS.** by and through his mother, | ) | |
| LISA JORGENSEN, | ) | |
| individually and on behalf of a class, | ) | No. |
| | ) | |
| Plaintiff, | ) | Judge: |
| | ) | |
| vs. | ) | Magistrate: |
| | ) | |
| **JULIE HAMOS**, in her official capacity as | ) | |
| Director of the Illinois Department of | ) | |
| Healthcare and Family Services, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

Now comes the Plaintiff, by and through his attorneys, Robert H. Farley, Jr., Ltd., Cahill & Associates and Michelle N. Schneiderheinze, and files the following complaint against the Defendant as follows:

**I. INTRODUCTION**

1. The Plaintiff, Don Harris is a medically fragile disabled person who currently receives funding from the Defendant for approximately 12 hours a day skilled nursing level of care at his home at a cost of approximately $12,000 per month, so that he does not have to be institutionalized or hospitalized for his entire life at a rate of approximately $55,000 per month. The Plaintiff's funding from the Defendant comes from the State of Illinois (Private Duty Nursing - "PDN") Services program for children who receive in-home services and/or Medicaid

2. The Plaintiff's enrollment in the PDN program is only available to persons under the

1

age of 21. When those persons in the PDN program turn 21, the Defendant's policy and practice is to reduce the existing medical funding by approximately 50% based solely on the fact that the person is now 21.  This reduction in funding is not due to a change in the Plaintiff's medical needs but on the fact that the Plaintiff's funding at age 21 comes from a different State program, which has significant caps on funding.  The reduction in funding will either result in the Plaintiff becoming institutionalized (hospitalized) or if he remains in the family home without sufficient skilled nursing care, then he faces a strong possibility of imminent death or a life threatening episode.

3.  Prior to the filing of this lawsuit by the Plaintiff, the Defendant has been successfully challenged by individual plaintiffs in 5 separate lawsuits over its practice and policy of reducing medical funding which results in a reduction of medical services when the disabled person turns 21 years of age.[1]  Despite the fact that the Defendant has not prevailed to provide reduced medical funding in these 5 separate federal and state lawsuits brought by similarly situated persons like the Plaintiff who were turning 21, the Defendant continues the same practice to date

---

[1]  Three Federal District Courts found that the Defendant violated the ADA and RA by reducing funding for medically fragile plaintiffs when they turned 21 years of age.   See *Radaszewski v. Maram*, 2008 U.S. Dist. LEXIS 24923, *37-41 (N.D. Ill. 2008) (J. Darrah); *Grooms v. Maram,* 563 F.Supp.2d 840 (N.D. Ill. 2008) (J. Pallmeyer); and *Sidell v. Maram,* 2009 U.S. Dist. LEXIS 131324 (C.D. Ill. 2009) (J. McDade).
Two other medically fragile plaintiffs have prevailed against the Defendant in Illinois. See:  *Jones v. Maram,* 867 N.E.2d 563 (3rd Dist. 2007) (Illinois Appellate Court affirming lower court granting of preliminary injunction for plaintiff who aged out of a medically fragile program and was at-risk of institutionalization); *Fisher v. Maram,* 06 C 4405 (N.D. Ill.) (January 8, 2009 - Doc. 118) (J. Guzman) (enjoining Defendant from reducing services for plaintiff who aged out of a medically fragile program).

to reduce medical funding at age 21 as evidence by the Plaintiff's case. Moreover, approximately 23 medically fragile plaintiffs and class members in *Hampe v. Hamos,* No. 10-3121 (N.D. IL) (J. Castillo) have obtained interim relief to prevent the State of Illinois from reducing their level of skilled nursing and medicaid benefits when they turn 21 years of age pending the outcome of *Hampe.* [2] Accordingly, the Plaintiff brings this lawsuit, individually and on behalf of a class, seeking injunctive relief to prevent the Defendant from reducing the level of funding for medical care currently provided to the Plaintiff and the putative class, which is necessary to prevent institutionalization (hospitilization), which is a more costly and a more restrictive setting than the current home placement.

4. This class action lawsuit is necessary in order to stop the Defendant from continuing to systematically violate the Americans with Disabilities Act and the Rehabilitation Act for persons aging out of the "PDN" program and for persons who are medically fragile and turning 21 years of age and facing significant reductions in their funding which places them at risk of either institutionalization or death.

## II. JURISDICTION & VENUE

5. This is an action for declaratory and injunctive relief to enforce the rights of the Plaintiff and the class he seeks to represent under the Americans with Disabilities Act, 42 U.S.C.

---

[2] In *Hampe v. Hamos,* No. 10-3121, N.D. IL (J. Castillo), a class action lawsuit involving medically fragile persons enrolled in the State of Illinois Medically Fragile, Technology Dependent Waiver (MF/TD), the plaintiffs have prevailed in obtaining approximately 23 Court Orders since the filing of the lawsuit to prevent the reduction of skilled nursing and medicaid benefits to the Plaintiffs and Class members when they turns 21, pending the outcome of *Hampe.* (Doc. 11, 33, 49, 58, 73, 81, 83, 85, 87, 89, 95, 98, 104, 106, 108, 112, 114,.118, 146, 155, 166, 167, 169). The instant case seeks class action status on behalf of the other group of medically fragile persons in Illinois who are enrolled in the Private Duty Nursing Program (PDN) in Illinois. This group is not enrolled in the MF/TD Waiver and is not part of the class in *Hampe.*

Sec. 12132 and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a).

6.  This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. Sections 1331 and 1343.  Plaintiff's claims for declaratory and injunctive relief are authorized under 28 U.S.C. Sec. 2201-02 and 42 U.S.C. Sec. 1983.

7.  Venue is proper in the Northern District of Illinois under 28 U.S.C. Sec. 1391(b).

### III.  PARTIES

8(a).  The Plaintiff, Don Harris (Don) will be 21 years old on September 21, 2012, is medically fragile and currently receives funding from the Defendant for approximately 12 hours a day skilled nursing level of care at his home (84 hours per week).  These nursing services are either provided by a registered nurse (RN) or a licensed practical nurse (LPN).

8(b).  Don is severely and profoundly developmentally disabled.  He is blind and non-verbal.  Don is completely dependent on someone for all of his care.  He requires frequent positioning, monitoring of seizure activity and assessing for signs and symptoms of infections.

8(c).  Don has diagnoses of adrenoleukodystrophy, adrenal insufficiency, seizures and spastic quadriplegia.  Don has generalized clonic episodes that are difficult to distinguish between clomus and myoclomus.  Don has a gastrostomy tube.  He does have reactive airways disease at times.  Don's chest shows a very severe scoliosis.  Don's extremities show severe spastic.  The back shows a severe kyphoscoliosis.  The extremities show flexion contractures.

8(d).  A skilled nursing level of care is required for Don.

8(e).  The alternative to Don's skilled nursing care at his residence is hospitalization / institionalization.

8(f).  Don resides with his mother, Lisa Jorgensen in Naperville, Illinois.

4

9.  The Defendant, Julie Hamos, is the Director of the Illinois Department of Healthcare and Family Services (HFS) and is being sued in her official capacity.

## IV.   CLASS ACTION ALLEGATIONS

10.  Plaintiff bring this action on behalf of himself and as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

11.  The Class consists of the following:

> All medically fragile and technology dependent children persons who are enrolled or will be enrolled or were enrolled in the State of Illinois Medicaid (Private Duty Nursing - "PDN") Services for children, who receive in-home services but do not meet the institutional level of care to qualify for services under the Medically Fragile, Technology Dependent Medicaid Waiver (MF/TD), and when they obtain the age of 21 years are subjected  to reduced Medicaid funding which reduces the medical level of care which they had been receiving prior to obtaining 21 years.

12.  The Class is so numerous that joinder of all persons is impracticable. The Defendant, the Illinois Department of Healthcare and Family Services has stated in June, 2012, the following:

> Currently, [Illinois] serves medically fragile and technology dependent children in two different ways: approximately 550 children are served by the Medically Fragile, Technology Dependent Waiver ("MFTD Waiver") and approximately 500 other technology dependent children under Medicaid, who receive in-home services but do not meet the institutional level of care to qualify for services under the MFTD Waiver.
> (See: www2.illinois.gov/hfs/agency/Pages/MFTD.aspx  ) ("Questions and Answers on the Medicaid Program for Medically Fragile and Technology Dependent Children" at No. 2).

The Defendant has also prepared a "Fact Sheet" which states that for fiscal year 2010, 527 persons were enrolled in the Private Duty Nursing (PDN) Services for Children program.   (See: www.hfs.illinois.gov/assets/ccmn_pdnfactsheet.pdf )

5

The class members have limited financial resources and are unlikely to institute individual actions.

13.    The claims of the class members raise common questions of law and fact.  These include:

(a)  Whether the Defendant violated the ADA and Rehabilitation Act by reducing the level of funding for persons enrolled in the Illinois Private Duty Nursing (PDN) Services for Children program or Medicaid which resulted in a reduction of medical services.

(b) Whether the ADA and Rehabilitation Act permits the Defendant to reduce the level of funding which results in a reduction of medical services for disabled persons after the age of 21, even though there has been no change in their medical needs.

(c) Whether a fundamental alteration of the Illinois disability programs would occur if the Defendant provided funding to continue the same level of services for the Plaintiff and the putative class when they turn the age of 21 years.

(d) Whether the Illinois disability programs can reasonably accommodate a modification to their existing programs to allow the Plaintiff and putative class to continue to receive the same level of care in the community when they turn the age of 21 years.

(e)  Whether compelling an increase in the "exceptional care rate" for persons exiting the PDN program into the Illinois Home Services Program is unreasonable under the ADA and Rehabilitation Act.

The common questions of fact and law predominate over questions affecting only individual class members.

14.  The Plaintiff's claims are typical of the class members' claims.

6

15.   The Plaintiff is an adequate representative of the class because he suffers from deprivations identical to those of the class members and has been denied the same federal rights that he seeks to enforce on behalf of the other class members.  The Plaintiff will fairly and adequately represent the interests of the other class members, many of whom are unable to pursue claims on their own behalf as the result of their disabilities.  Plaintiff's interest in obtaining injunctive relief for the violations of constitutional rights and privileges are consistent with and not antagonistic to those of any person within the class.  Plaintiff's counsel are qualified, experienced and able to conduct the proposed litigation.

16.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy in that:

> (i) A multiplicity of suits with consequent burden on the courts and defendants should be avoided.

> (ii) It would be virtually impossible for all class members to intervene as parties-plaintiffs in this action.

17.   The Defendant has acted or refused to act on grounds applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## V.   STATEMENT OF FACTS

### A.  Plaintiff Don Harris

18(a).   The Plaintiff, Don Harris (Don) will be 21 years old on September 21, 2012, is medically fragile and currently receives funding from the Defendant for approximately 12 hours a day skilled nursing level of care at his home (84 hours per week).  These nursing services are either provided by a registered nurse (RN) or a licensed practical nurse (LPN).

18(b).   Don is severely and profoundly developmentally disabled.  He is blind and non-

verbal. Don is completely dependent on someone for all of his care. He requires frequent positioning, monitoring of seizure activity and assessing for signs and symptoms of infections.

18(c). Don is medically fragile and has diagnoses of adrenoleukodystrophy, adrenal insufficiency, seizures and spastic quadriplegia. Don has generalized clonic episodes that are difficult to distinguish between clomus and myoclomus. Don has a gastrostomy tube. He does have reactive airways disease at times. Don's chest shows a very severe scoliosis. Don's extremities show severe spastic. The back shows a severe kyphoscoliosis. The extremities show flexion contractures.

18(d). A skilled nursing level of care is required for Don.

18(e). The alternative to Don's skilled nursing care at his residence is hospitalization / institionalization.

18(f). Don resides with his mother, Lisa Jorgensen in Naperville, Illinois.

19. Don's current funding from the Defendant comes from the State of Illinois (Private Duty Nursing - "PDN") Services program for children who receive in-home services and/or Medicaid. Don's funding from the Defendant for skilled nursing level of care at his home is at a cost of approximately $12,000 per month, so that he does not have to be institutionalized or hospitalized for his entire life at a rate of approximately $55,000 per month.

20. Don's enrollment in the PDN program is only available to persons under the age of 21 and Don will turn 21 on September 21, 2012. When Don or any disabled person turns 21 in the PDN program, the Defendant's policy and practice is to reduce continuing medical funding by approximately 50% based solely on the fact that the person is now 21. The reduction in funding is not due to a change in Don's medical needs but on the fact that Don's funding at age

8

21 comes from a different State program, which has significant caps on funding. The reduction in funding will either result in Don becoming institutionalized (hospitalized) or if he remains in his family home without skilled nursing care, then he faces a strong possibility of imminent death or a life threatening episode.

21.  When Don turns 21 years of age on September 21, 2012, he will be subjected to reduce funding at approximately 50% of his current rate and Don will be unable to maintain the same level of intensive skilled nursing care which he needs. The State of Illinois has informed Don through his mother, Lisa Jorgensen, that once Don turns 21, he will no longer be eligible to receive from the State of Illinois 84 hours per week of skilled nursing care. Lisa Jorgensen was told by a representative from the Illinois Department of Human Services - Division of Rehabilitative Services, that when Don turns 21 years of age, that he would be able to only receive 20 hours per week for a personal assistant and no nursing services. This State policy of significantly reducing funding for services for a medically fragile person, is in conflict with 5 recent Federal and State court cases, where the Defendant was not permitted to reduce funding for a medically fragile person when he or she turned 21 years of age. (See cases listed in paragraph 3 above)

22.  If Don is unable to receive the current level of skilled nursing care in his home, then he would be forced to be institutionalized and obtain medical care in a hospital setting at a rate of approximately $55,000 per month, which costs more than his current level of funding in the family home.

23.  Don is requesting injunctive relief to require the Defendant to provide funding to maintain the current level of skilled nursing care which he receives in order that he may remain

in the community and not be institutionalized or hospitalized for his entire life.   The actions of

the Defendant constitute unlawful discrimination under Title II of the Americans with

Disabilities Act (ADA), 42 U.S.C. Sec. 12132, and Section 504 of the Rehabilitation Act, 29

U.S.C. Sec. 794(a).

24.  Don is an individual with a disability.

25.  Don is a recipient of Medical Assistance, commonly known as Medicaid.

**B.  The Federal/State Medical Assistance Program**

26.  Medical Assistance, commonly known as Medicaid, is a joint federal and stated

funded program enacted to provide necessary medical assistance to needy aged or disabled

persons and families with dependent children, whose income and resources are insufficient to

meet the cost of care.  42 U.S.C. Sec. 1396.  States choosing to participate in the Medicaid

program must operate the program in conformity with federal statutory and regulatory

requirements.  42 U.S.C. Sec. 1396a.

27.  Each State participating in the Medicaid program must submit a Medicaid plan to the

Secretary of Health and Human Services (HHS) for approval.  42 U.S.C. Sec. 1396.

28.  Each State must designate a single state agency to administer and / or supervise the

administration of the state's Medicaid plan.  42 U.S.C. Sec. 1396a(a)(5).

29.  In Illinois, the Department of Healthcare and Family Services (HFS) is the single

state agency responsible for administering the Medicaid program.

30.  States have the option of covering persons needing home-and-community-based

services, if these persons would otherwise require institutional care that would be paid for by

Medicaid.  42 U.S.C. Sec. 1396n(c)(1).  Under this waiver authority, the Secretary of HHS may

10

grant waivers of specified requirements like service limitations that are otherwise applicable to the State's Medicaid plan. 42 U.S.C. Sec. 1396n(c)(3). Waiver programs must be cost-neutral in that the average cost of providing care for program participants in the home or community based setting must not exceed the estimated average cost of providing care in the institutional setting they would require. 42 U.S.C. Sec. 1396n(c)(2)(D); 42 C.F.R. Sec. 441.302(e).

31. Illinois has implemented a total of nine (9) federally approved home-and-community-based care waiver programs in its Medicaid program which were approved by the Secretary of Health & Human Services (HHS). Two of the nine waiver programs are as follows:

- Children that are Technology Dependent / Medically Fragile (MF/TD)

- Persons with Disabilities (Home Services for Adults with Disabilities) (HSP)

**C. Private Duty Nursing (PDN) Services Program For Children Under Age 21.**

32. With respect to the Private Duty Nursing (PDN) Services for Children program under the age of 21, the Illinois Department of Healthcare and Family Services (HFS) Division of Medical Program provides services to children under age 21 who have been determined to have extensive medical needs, requiring ongoing skilled nursing in the home setting. Children must meed Medicaid eligibility and live in a private home. Children receiving this PDN may not be concurrently receiving services under the Medically Fragile, Technology Dependent (MF/TD) Home and Community-Based Services (HCBS) waiver. Services are prior approved initially for 60 days with two 50-day renewal periods. After the first 180 days of service, cases are reviewed on 6-month or annual schedules depending on the medical stability of the child. Services are provided by approved Home Nursing Agencies licensed by the Department of Public Health. (See: PDN Fact Sheet at www.hfs.illinois.gov/assets/ccmn_pdnfactsheet.pdf )

11

33. The Eligiblity Criteria for the PDN program is as follows:

a) Children under the age of 21 who have extensive medical needs and require ongoing skilled nursing care as determined by the Department's prior approval process.

b) U.S. Citizen or legal alien.

c) Be a resident of the State of Illinois.

d) Under age 21.

e) Eligible for the Medical Assistance Program.

f) Prior approved for services by the Department.

g) Physician order and justification for services.

(See: PDN Fact Sheet at www.hfs.illinois.gov/assets/ccmn_pdnfactsheet.pdf )

**D. Medically Fragile / Technology Dependent Waiver Program (MF/TD).**

34. Under the waiver program for Medically Fragile, Technology Dependent Children, Illinois pays for home-based care for children under age 21 who have exceptional medical needs. The Illinois Department of Healthcare and Family Services (HFS) administers this waiver program with participation of the University of Illinois' Division of Specialized Services for Children (DSCC) under an agreement with HFS.

35. The Illinois Medicaid Home and Community-Based Services ("HCBS") waiver program, which includes the MF/TD program, allows the State of Illinois to provide services to persons, like the Plaintiffs, in an individual's home or community as long as those services prevent the individual from being institutionalized or hospitalized.

36. The MF/TD waiver for children serves persons under 21 years of age who would require institutional care in a hospital or nursing facility, if nursing and waiver services were not

12

provided in the home. Cost-effectiveness for eligibility is compared to service costs in a hospital or nursing facility. The primary expenditure for children in the MF/TD waiver is skilled nursing.

**E. Persons with Disabilities** (Home Services Program) (HSP)

37. Under the Home Services waiver program (HSP), Illinois funds services to enable disabled adults to remain in their homes or in a community setting. The Illinois Department of Healthcare and Family Services (HFS) administers the HSP program with the participation of the Division of Rehabilitative Services (DRS) of the Illinois Department of Human Services (DHS) through an agreement with HFS.

**F. Don's Current Medical Plan**

38. Currently, HFS provides a medical plan for Don that is medically necessary and a cost-effective alternative to care in the institutional setting that HFS determined Don would otherwise require.

39. Through the PDN program and Medicaid, HFS pays for skilled nursing care which Don needs in his home. Currently, Don receives 84 hours per week of skilled nursing care. Don has been receiving 84 hours per week of skilled nursing care for approximately the last 10 years.

40. HFS approved and pays for approximately $12,000.00 of monthly medical services provided by a registered nurse and a licensed practical nurse. This plan allows Don to meet the costs for the salaries and benefits of the skilled nursing services that he requires.

41. Don, through his mother, had been informed that when Don turns 21 years of age on September 21, 2012 that he will no longer be eligible to receive from the State of Illinois, 84 hours per week of skilled nursing care. Don's mother has been told by a representative from the

13

Illinois Department of Human Services - Division of Rehabilitative Services, that when Don

turns 21 years of age, that he would be able to only receive 20 hours per week for a personal

assistant and no nursing services.

42.  Don needs to continue to receive 84 hours per week of skilled nursing services.

43.  The proposed reduction in funding / services by the Defendant is based solely on the

fact that Don will reach 21 years of age on September 21, 2012.  The reduction in funding /

services is not due to a change in Don's medical needs, which in fact have remained unchanged.

44.  Don's physician, Dr. James H. Tonsgard has determined that Don can be cared for at

home safely and appropriately.

45.  Under the laws governing the Home Services Program, HFS has discretion to set

funding for services for persons whose needs cannot be met by otherwise applicable caps,

provided that the program is cost neutral.

46.  With no modifications in its regulations, and little modifications in its practices, HFS

could continue to fund the level of nursing care that Don requires in order to remain at home at a

cost that is less than would be required to serve him in an appropriate institutional setting for the

care he needs.

47.  If allowed to go into effect, the proposed reduction in funding for Don's medical care

will ultimately force Don into an institutional setting (hospital), isolating him from home and

community, or alternatively, will likely result in his imminent death or a life threatening episode

if he remains in his home.

48.  The Defendant has informed the Plaintiff, through his mother, that the reduced

funding will take effect on Don's birthday, September 21, 2012.

14

## VI.   CAUSES Of ACTION

## COUNT I

## VIOLATION OF AMERICAN WITH DISABILITIES ACT (ADA)
## AND 42 U.S.C SECTION 1983

49.   The Plaintiff repeats and incorporates by reference as though fully set forth here the facts contained in paragraphs 1 through 48 above.

50.   Title II of the American with Disabilities Act (ADA) provides that no qualified person with a disability shall be subjected to discrimination by a public entity. 42 U.S.C. Sec. 42 U.S.C. Sec. 12132.  A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. Sec. 35.130(d) (1998).  Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the ADA.

51.   The Plaintiff is a qualified individual with disabilities within the meaning of Title II of the ADA.

52.   The Illinois Department of Healthcare and Family Services of which Defendant Hamos is Director is a "public entity" within the meaning of Title II of the ADA.

53.   The actions by HFS constitute unlawful discrimination under 42 U.S.C. Sec. 12132 and violate the integration mandate of the regulations implementing this statutory prohibitions. 28 C.F.R. Sec. 35.130(d).

54.   The Defendant's planned reduced funding or actual reduced funding of the home nursing and other services which the Plaintiff needs in order to avoid institutionalization, violates Title II of the ADA, 42 U.S.C. Sec. 12132 and its implementing regulation.  28 C.F.R. Sec.

35.130(d).

55.  The Plaintiff and the putative class will suffer irreparable injury if the Defendant is not enjoined from reducing the funding when a person turns the age of 21 years, as the reduced level of funding will force the Plaintiff and the putative class into an institution, where they will not receive the most integrated setting appropriate to their needs, or alternatively, the reduced level of funding and remaining at home may lead to their death or serious injury.

56.  The Plaintiff and putative class have no adequate remedy at law.

57.  The Plaintiff is indigent and unable to post bond.


## COUNT II

## VIOLATION OF REHABILITATION ACT AND 42 U.S.C SECTION 1983

58.  The Plaintiff repeats and incorporate by reference as though fully set forth here the facts contained in paragraphs 1 through 57 above.

59.  The Rehabilitation Act, 29 U.S.C. Sec. 794, prohibits public entities and recipients of federal funds from discriminating against any individual by reason of disability.  The implementing regulation for the statute requires that public and federally-funded entities provide programs and activities "in the most integrated setting appropriate to the needs of the qualified individual with a disability."  28 C.F.R. Section 41.51(d).  Policies and practices that have the effects of unjustifiably segregating persons with disabilities in institutions constitute prohibited discrimination under the RA.

60.  The Illinois Department of Healthcare and Family Services is a recipient of federal funds under the Rehabilitation Act..

16

61. The Plaintiff is a qualified individual with a disability under Section 504 of the Rehabilitation Act.

62. The actions by HFS constitute unlawful discrimination under 29 U.S.C. Sec. 794(a) and violate the integration mandate of the regulations implementing this statutory prohibition. 28 C.F.R. Sec. 41.51(d).

63. The Defendant's planned reduced funding or actual reduced funding of the home nursing and other services which the Plaintiff needs in order to avoid institutionalization, violates Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794(a) and its implementing regulation. 28 C.F.R. Sec. 41.51(d).

64. The Plaintiff and the putative class will suffer irreparable injury if the Defendant is not enjoined from reducing refunding when they turn the age of 21 years, as the reduced level of funding will force the Plaintiff and the putative class into an institution, where they will not receive the most integrated setting appropriate to his needs, or alternatively, the reduced level of funding and remaining at home may lead to their death or serious injury.

65. The Plaintiff and putative class have no adequate remedy at law.

66. The Plaintiffs are indigent and unable to post bond.

## VII.   REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully request that this Court:

(a)  Certify this case to proceed as a class action.

(b) Issue a Declaratory Judgment in favor of the Plaintiff and the Class and that the Defendant's reduction in funding which results in a reduction of medical services when aging out of the State of Illinois Private Duty Nursing (PDN) Services Program violates the  Americans with Disabilities Act, 42 U.S.C. Sec. 12132  and Section 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794(a) and their implementing regulations, 28 C.F.R. Sec. 35.130(d), 41.51(d).

(c) Issue Preliminary and Permanent Injunctive relief requiring the Defendant to restore the level of funding to maintain the existing medical services for the Plaintiff and putative class prior to aging out of the State of Illinois Private Duty Nursing (PDN) Services Program.

(d) Award Plaintiffs and the Class the costs of this action, including reasonable attorneys fees, pursuant to 42 U.S.C. Section 12205; Section 504 of the Rehabilitation Act, and 42 U.S.C. Section 1988; and

(e) Award such other relief as the Court deems just and appropriate.

Respectfully submitted,

*/s/ Robert H. Farley, Jr.*
One of the Attorneys for
the Plaintiff

Robert H. Farley, Jr.
Robert H. Farley, Jr., Ltd.
1155 S. Washington Street
Naperville, IL 60540
630-369-0103
farleylaw@aol.com


Mary Denise Cahill
Cahill & Associates
1155 S. Washington Street
Naperville, IL 60540
630-778-6500
mdcahill@sbcglobal.net


Michelle N. Schneiderheinze
2401 E. Washington Street
Suite 300C
Bloomington, IL 61704
309-533-7340
michelle@mnslawoffice.com