UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DON HARRIS, by and through his mother,
LISA JORGENSEN, individually and on
behalf of a class,

    Plaintiff,

    v.

JULIE HAMOS, in her official capacity as
Director of the Illinois Department of
Healthcare and Family Services,

    Defendant.

No. 12 C 7105
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Don Harris, by and through his mother, Lisa Jorgensen, has brought this action individually and on behalf of a class against Defendant Julie Hamos in her official capacity as Director of the Illinois Department of Healthcare and Family Services. Plaintiff seeks declaratory and injunctive relief, alleging, *inter alia*, violations of the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act ("RA"). Defendant now moves to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, Defendant's motion is denied.

### BACKGROUND

Don Harris is a medically fragile disabled person who currently receives funding from Defendant for approximately 84 hours per week of private-duty nursing care. Don, who turned 21 last September, had been receiving this treatment through a program called Early Periodic Screening, Diagnosis, and Treatment ("EPSDT"). EPSDT is a program that state Medicaid plans are required by the federal government to include. Under this program, the state must provide

1

any service that is listed in Section 1905(a) of the Social Security Act that is medically necessary to individuals under the age of 21.[1]

Don has been receiving this care at home by virtue of another Medicaid program, a waiver program for Medically Fragile Technology Dependent Children ("MFTDC"). Under this program, Illinois pays for home-based care for children under the age of 21 who have exceptional medical needs. The Home Services Program ("HSP") is a similar waiver program that services adults. Both programs essentially enable care recipients to receive their care at home, so long as they would otherwise be entitled to the care in an institutional setting, and the net effect of the change in setting is cost neutral.

Don suffers from a genetic disorder called adrenoleukodystrophy, diagnosed when he was a fairly normal four-year-old. He is now severely developmentally disabled and suffers from adrenal insufficiency, seizures, and spastic quadriplegia. Don is blind and non-verbal, and he is completely dependent on others for accomplishing basic bodily functions. He has a gastrostomy tube, weighs approximately 50 pounds, and suffers from severe scoliosis.

In addition to requiring near constant care to aid in basic bodily functions, Don also requires constant care to monitor seizure activity and assess potential signs and symptoms of infections. The disorder from which Don suffers interferes with the body's usual defenses to infections. As a consequence, he does not display the typical signs one sees when a person's body is fighting off infection – for example, a fever. Careful scrutiny is thus required to watch for subtle, seemingly innocuous signals from Don (for example, slight reddening of the face, or more rapid eye movement than usual) that he is in discomfort and that his body may have encountered some sort of infection. Failure to promptly detect such an infection would almost

---

[1] *Radaszewski ex rel. Radaszewski v. Maram*, 2008 WL 2097382, *7 (N.D.Ill. March 26, 2008) provides a detailed discussion of Illinois healthcare programs and services in the context of a similar case.

certainly be fatal.

An evidentiary hearing was held on November 21, 2012 that included testimony from Dr. James H. Tonsgard a specialist who has cared for Don since he was a child. The foregoing account of Don's condition was uncontradicted at the hearing. Dr. Tonsgard testified that Don's survival depended upon him receiving the near constant care he had been receiving from private-duty nurses and his family. Dr. Tonsgard also expressed skepticism regarding the likelihood that Don would be able to find this level of care in a nursing home.

Defendant asserts that, upon turning 21 in September 2012, Don was no longer eligible to participate in the MFTDC waiver program. Don's mother avers that she was told that the home-based care program for which Don is currently eligible would provide only 20 hours per week for a personal assistant and no nursing services. I granted Plaintiff's motion for a temporary restraining order on September 18, 2012, and Don's care has thus far continued without interruption.

## DISCUSSION

When considering a motion to dismiss for failure to state a claim, a court must treat all well-pled allegations as true, and draw all reasonable inferences in the plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations must be enough to raise a right to relief above the speculative level, that is, the pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. *Id*.

3

Plaintiff has demonstrated a claim to relief that rises beyond the speculative level. As a general matter, I find Judge Rovner's opinion in *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599 (7th Cir. 2004), and Judge Darrah's opinion in the same case on remand to be instructive (and perhaps binding) here.

Eric Radaszewski, like Don Harris, was eligible for extensive home-based healthcare services until he reached the age of 21. Mr. Radaszewski suffers from brain cancer. A related mid-brain stroke suffered at the age of 14 left him severely impaired both physically and mentally with multiple and complex disabilities. Through the MFTDC waiver program, Mr. Radaszewski was receiving 112 hours of private-duty nursing care at home per week. The uncontradicted evidence at trial demonstrated that, given Mr. Radaszewski's fragile medical condition and his severe vulnerability to even ubiquitous and otherwise innocuous infections, this level of care was not merely desirable, but rather vital to his survival.

Like Don, Mr. Radaszewski was told that when he reached the age of 21, he would no longer qualify for the MFTDC program. He was told that, under existing state and federal programs, he would be eligible to receive only five hours per day of private-duty nursing.

Finding this insufficient, Mr. Radaszewski's alternative was to be institutionalized. Crucially, however, Judge Darrah found that, even if Mr. Radaszewski were placed in an institution, "Illinois would be required to provide Eric the necessary level of health care – constant monitoring and continuous skilled assistance in accomplishing basic bodily functions." *Radaszewski ex rel. Radaszewski v. Maram*, 2008 WL 2097382, *15 (N.D.Ill. March 26, 2008]. Judge Darrah further found:

> The unrebutted evidence clearly shows that the cost of caring for Eric in the proper institutional setting – a hospital – would be substantially greater than the cost of allowing Eric to remain in the community and receive the same proper treatment and health care. Allowing Eric to remain in the community can be

> readily accommodated, taking into account Illinois' resources and the needs of others with similar disabilities. Illinois can approve an HSP plan for Eric that exceeds the nursing home rate. If otherwise necessary, Illinois could also modify or alter the waiver from the federal government, which encourages the states to use home and community-based waivers to meet the community integration contemplated by Olmstead. Illinois could act in cooperation with the federal government to achieve community-based integration which may otherwise be impeded by existing rules or requirements. Thus, there is no need to adapt existing institutional-based services to a community-based setting that would impose unreasonable burdens or fundamentally alter the nature of Illinois' services and programs.

*Id*.

I see no material distinction between *Harris* and *Radaszewski* – at least not here, at the motion to dismiss stage in *Harris*. Defendant offers no reason to doubt that Don requires the level of care that his mother and his doctor assert he needs. Nor have Defendants shown that he would not receive that care, as a matter of necessity, were he institutionalized. Given this sobering reality, Plaintiff asserts that if the cost to provide this treatment for Don at home is no greater than providing it in a hospital (indeed, Plaintiff asserts that it is substantially less), and if Mr. Harris otherwise qualifies for home or community-based care, there should be no problem with continuing to provide Don with the care he has been receiving.

Don is by no means unqualified for home-based care within the meaning of *Olmstead v. L.C.*, 527 U.S. 581 (1999). "He is not someone who is unable to handle or benefit from community settings, whom the State's medical professionals believe is not able to live in a community-integrated setting, or who does not want to live in such a setting." *Cf. Radaszewski*, 383 F.3d at 612 (internal citations omitted); *see Olmstead*, 527 U.S. at 601-02. Further, given that the same cost-neutrality requirement applied to Don's home-based care under the MFTDC waiver program, one can reasonably infer, certainly sufficient for this stage of the proceeding, that his home-based care could in fact be less expensive than caring for Don in an institution.

5

*Cf. Radaszewski*, 383 F.3d at 613.

## CONCLUSION

Defendant will have an opportunity to attempt to controvert each of these assertions. For now, however, Plaintiff's pleadings are sufficient to survive Defendant's 12(b)(6) motion. Defendant's motion to dismiss [17] is therefore denied, and the temporary restraining order shall remain in place.[2]

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: December 26, 2012

---

[2] There is no absolute requirement to provide nursing care. *See e.g.*, Deborah L. Shelton, *Our Most Fragile*, Chi. Trib., Dec. 9, 2012, at 1. But absent an abolition of the nursing care that is permitted under federal law, the denial of such care in this case may be inconsistent with applicable precedent and regulations.